**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**John FREEMAN, et al., Defendants.**

No. 00 Civ.1963.

United States District Court, S.D. New York.

Nov. 5, 2003.

William R. Baker, III, Peter H. Bresnan, Antonia Chion, Charles J. Clark, Tracy R. Swann, Securities and Exchange Commission, Kenneth L. Miller, Assistant Chief Litigation Counsel Division of Enforcement, Washington, DC, for Plaintiff.

Ruth Ann Cox, Pedley Zielke & Gordinier, Louisville, KY, Richard A. Finkel, Meissner, Kleinberg & Finkel, LLP, New York City, Thomas N. Kerrick, Kerrick, Grise, Stivers & Coyle, P.L.C., Bowling Green, KY, Terence J. Lynam, Akin Gump Strauss Hauer & Feld, LLP, New York City, W. Currie Milliken, Milliken Law Firm, Bowling Green, KY, Philip S. Raible, Mintz & Gold, L.L.P., New York City, James F. Sanders, James G. Thomas, Neal & Harwell, P.L.C., Nashville, TN, Margaret M. Shalley, New York City, for Defendants.

## DECISION AND ORDER

MARRERO, District Judge.

### I. BACKGROUND

Plaintiff Securities and Exchange Commission ("SEC") filed a motion for partial summary judgment against defendant Norman Grossman ("Grossman"), one of nineteen defendants charged in the civil action (the "Civil Action") filed by the SEC in this Court on March 14, 2000.[1] The complaint alleges insider trading by the various defendants in violation § 10(b) (" § 10(b)") of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78 j(b), and Rule 10b–5, 17 C.F.R. § 240. 10 b–5, promulgated thereunder. In a parallel criminal action (the "Criminal Action") brought by the United States Attorney for the Southern District of New York, Grossman and other persons named in the SEC complaint, were prosecuted for the same conduct charged by the SEC in the Civil Action. Grossman pleaded guilty to each of the counts with which he was charged and was so adjudged in December 2000. A Final Judgment and an Amended Final Judgment were entered in the Criminal Action on May 14, 2002 and May 30, 2002, respectively.[2] Grossman was sentenced to a term of incarceration, which he has been serving at the Fort Dix Federal Correctional Institution and from which he is scheduled to be released to community confinement in November 2003.

Relying on the determination of the essential facts conclusively decided in the criminal proceeding, and contending that under application of collateral estoppel Grossman is precluded from relitigating matters adjudicated by his criminal convic-

---

1. To date, Final Judgments have been entered in this Court adjudicating the SEC's claims as against twelve of the defendants.

2. See *United States v. Grossman,* 00 Cr. 502(JSM) (S.D.N.Y.2000).

tion, the SEC moved on January 29, 2002 for partial summary judgment (the "Motion") on its First Claim for Relief in the Civil Action before this Court on the issues pertaining to Grossman's § 10(b) liability.[3]

Grossman, at that time represented by the firm of Mintz & Gold LLP ("Mintz"), requested and obtained an extension of the time to respond to the Motion, from the original due date of February 26 to March 28, 2003. Just prior to that new deadline, Mintz sought leave to withdraw as Grossman's counsel. By Order dated March 31, 2003 the Court further extended Grossman's time to respond to the Motion until the Court's determination of Mintz's motion to withdraw.

On May 27, 2003 the Court granted Mintz's application, but conditioned relief upon Mintz's representation of Grossman continuing until the filing of Grossman's response to the Motion. Mintz then requested reconsideration, advising the Court that among its grounds for seeking to withdraw were ethical qualms it felt by reason of Grossman's insistence that the firm assert a "meritorious defense" to the Motion, despite Grossman's criminal conviction on essentially the same charges, and in the face of Mintz's view that no such defense existed. Following a conference on June 20, 2003 to consider Mintz's request, of which Grossman had prior notice through counsel and opportunity to submit comment to the Court, the Court granted Mintz's application to withdraw (the "June 20 2003 Order"). To allow Grossman adequate time to seek substitute counsel or prepare a defense *pro se*, the Court again extended Grossman's time to respond to the Motion to August 20, 2003.

Grossman, acting *pro se*, filed a Notice of Interlocutory Appeal to the Court of Appeals for the Second Circuit challenging the Court's June 20, 2003 Order. This Court, in an Order dated July 28, 2003, declined to certify the matter for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). By letter dated August 11, 2003, Grossman sought reconsideration of the June 20, 2003 Order. The Court found no persuasive ground for reconsideration and denied the request. However, based on Grossman's representation that he expected to be released in October 2003 to serve the balance of his sentence at a community facility and would then be better able to obtain counsel or otherwise address the Motion, the Court allowed Grossman yet another extension to respond through November 1, 2003. At that time the Court admonished Grossman that he had had sufficient notice of the Motion and more than ample time to address it, and that the Court would not consider any further extensions. Nonetheless, on October 13, 2003, Grossman again requested the Court to extend his time to respond to the Motion pending the Second Circuit's determination of his appeal of the Court's June 20, 2003 Order.

The Court now denies Grossman's request. Grossman, as the Court advised him, has now had notice of the Motion for more than nine months, and over four months to find substitute counsel since Mintz's withdrawal, or to respond *pro se*. As of July 28, 2003, Grossman was aware that this Court had rejected certification of his interlocutory appeal. Despite the numerous extensions granted to him to account for the special circumstances present here, including Grossman's incarceration and the withdrawal of his counsel, and ignoring the admonition in August 2003

---

**3.** The SEC also asserted a Second Claim for Relief against Grossman pursuant to § 14(e) of the Exchange Act, 15 U.S.C. § 78 n(e), and Rule 14 e–3, 17 C.F.R. § 240.14 e–3. That claim is not at issue in this action.

that the Court would not countenance further extension, Grossman once again waited until the eve of the latest deadline to seek another delay. The Court finds neither merit nor good faith in Grossman's request, and concludes that under the circumstances further delay in considering the Motion would be prejudicial to the SEC and would not otherwise advance the interests of justice and sound judicial administration. For these reasons, the Court now proceeds to the review the Motion.

## II. DISCUSSION

### A. STANDARDS OF REVIEW

A party is entitled to summary judgment if on the basis of the record before it, including the pleadings, admissions and affidavits filed, the Court concludes that there is no genuine issue as to any material fact, and that, based on the undisputed facts, the moving party as entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 68 (2d Cir.2000).

### B. COLLATERAL ESTOPPEL

■ Summary judgment is appropriate under doctrine of collateral estoppel (issue preclusion) when all the material issues of fact in a pending action have been actually and necessarily resolved in a prior proceeding. *See State of New York v. Julius Nasso Concrete Corp.*, 202 F.3d 82, 86 (2d Cir.2000); *NLRB v. Thalbo Corp.*, 171 F.3d 102, 109 (2d Cir.1999). "[A] criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case." *United States v. Podell*, 572 F.2d 31, 35 (2d Cir.1978) (citations omitted). For collateral estoppel to apply, the court must find that (1) "the issues in both proceedings are identical; (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Thalbo Corp.*, 171 F.3d at 109.

### C. APPLICATION OF STANDARDS

■ Grossman's conviction of § 10(b) violations stemmed from his participation in an insider trading scheme originated by John J. Freeman ("Freeman"). Grossman, a retired school teacher who was in the wine business, became acquainted with Freeman as a frequent patron of a restaurant where Freeman was employed as a waiter. Freeman also worked part-time for a staffing agency that supplied temporary personnel to businesses in the legal and financial industries. During the course of his temporary employment, Freeman performed assignments for CS First Boston and Goldman Sachs. His tasks in this regard included preparation of graphs, charts, and spreadsheets included in documents and materials used in connection with mergers, acquisitions and similar financial transactions. Through this work Freeman gained access to private confidential materials concerning the firms involved, their clients and financial transactions not yet public. Using information obtained from documents available to him and from his own research, Freeman was able to identify various companies that were the subjects of those transactions. Freeman would then pass the inside information to his co-conspirators, including Grossman, who would use it to profit from unlawful trading in the securities of the entities involved.

According to the SEC, on approximately eight instances, Grossman used insider information he obtained from Freeman to purchase securities of companies involved in Goldman Sachs or CS First Boston transactions. From those investments Grossman earned illegal profits of at least $435,687 during the period 1998–2000. In turn, Grossman gave Freeman wine or cash in exchange for the information.

Based on Grossman's guilty plea to the charges of unlawful conduct relating to these events, the SEC's complaint in the parallel Civil Action seeks an order providing injunctive relief and disgorgement of unlawful profits with interest, as well as a monetary civil penalty.

The SEC points out that its allegations in the instant action and the charges in the indictment in the Criminal Action to which Grossman pled guilty establish the same pattern of illegal insider trading, and that by application of the doctrine of collateral estoppel Grossman is barred from relitigating issues already resolved against him. The Court agrees. *See Beck v. Levering,* 947 F.2d 639, 642 (2d Cir.1991). It is settled that a party in a civil case may be precluded from relitigating issues adjudicated in a prior criminal proceeding and that the Government may rely on the collateral estoppel effect of the conviction in support of establishing the defendant's liability in the subsequent civil action. *See Podell,* 572 F.2d at 35; *see also Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38 43 (2d Cir.1986); *SEC v. Tandem Mgmt. Inc.,* No. 95 Civ. 8411, 2001 WL 1488218, at *8 (S.D.N.Y. Nov. 21, 2001); *SEC v. McCaskey,* No. 98 Civ. 6153, 2001 WL 1029053, at *3 (S.D.N.Y. Sept. 6, 2001).

The elements the SEC would be required to prove Grossman's insider trading violations are essentially the same as those embodied in Grossman's criminal conviction. Grossman's guilty plea incorporated the actual litigation and decision of those underlying issues. *See Podell,* 572 F.2d at 35. There was a full and fair opportunity for Grossman to litigate the issues in the criminal proceeding, and he elected to plead guilty, thereby accepting the truth of the charges brought against him. Finally, the unlawful insider trading activities that Grossman admitted in the criminal case are necessary to support a judgment on the merits of the Civil Action. Grossman is thus estopped from relitigating in the Civil Action now before this Court the facts and issues regarding the offenses to which he allocuted in previously entering a guilty plea. Because those facts and issues established insider trading violations of § 10(b) and Rule 10b–5, the SEC can rely on the judgment in the Criminal Action to establish Grossman's liability under the same charges alleged by the SEC in the civil complaint, and thereby support its First Claim for Relief. *See McCaskey,* 2001 WL 1029053, at *3.

The facts established by Grossman's conviction, uncontested on the record of the Motion that has been presented to the Court, are sufficient to satisfy all the prerequisites for civil liability under § 10(b) and Rule 10b–5.[4] From this evidence

---

4. Rule 10b–5 provides that it is unlawful:
   for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or any facility of any national securities exchange
   a. To employ any device, scheme, or artifice to defraud.
   b. To make any untrue statement of a material fact or to omit to state a material

fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
   c. To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

Grossman could be found to have engaged in unlawful insider trading with intent to deceive, manipulate or defraud, through Freeman's actions and with knowledge of Freeman's breaches of duties, by misappropriating non-public information for Grossman's use in connection with securities transactions subject to § 10(b). *See United States v. Falcone,* 257 F.3d 226, 232 (2d Cir.2001); *United States v. Cusimano,* 123 F.3d 83, 88 (2d Cir.1997); *SEC v. Mayhew,* 121 F.3d 44, 50 (2d Cir.1997). In the Criminal Action, Grossman admitted having obtained the insider information from Freeman and employing such non-public material to profit from purchases and sales of the stock of several companies involved in the underlying transactions. Grossman's criminal conviction likewise established his knowledge that the information he obtained from Freeman was confidential, non-public material, and that he was aware that his trading on the basis of such insider information constituted unlawful and willful violations of § 10(b) and Rule 10b–5.

Grossman's conviction also conclusively determined that his conduct did not entail an isolated instance, but occurred in a continuous and systematic pattern spanning over two years. He thus exhibited a high degree of culpable intent. Despite his criminal conviction on closely related or identical wrongdoing, Grossman has actively litigated this action, creating a reasonable inference of a likelihood that he may engage in future violations of § 10(b) and Rule 10b–5.

The Court thus finds the record sufficient to support the SEC's charges of § 10(b) violations by Grossman and adjudges Grossman liable for these offenses.

17 C.F.R. § 240.10b–5.

### D. *RELIEF*

■ On the basis of its review of the record before it, the Court is also persuaded that the SEC is entitled to the order it seeks providing the injunctive relief. *See SEC v. Cavanagh,* 155 F.3d 129, 135 (2d Cir.1998). In the context of insider trading, a court considers the following factors in deciding whether to grant injunctive relief: whether the defendant has been found liable for illegal conduct; the degree of scienter exhibited; whether the violation was an isolated incident; whether the defendant continues to maintain that his past conduct was blameless; and whether, by reason of his professional occupation, defendant might be in a position which may provide opportunity for future violations. *See id.* (citations omitted); *see also SEC v. First Jersey Sec., Inc.,* 101 F.3d 1450, 1477 (2d Cir.1996).

The SEC has presented uncontroverted facts establishing the amount of Grossman's profits from the insider trading here at issue as $435,687. (*See* Investment Reports of the Fidelity Investments Account of Norman Grossman, and Norman Grossman's Realized Profits from the Insider Trading Alleged in the SEC Complaint, attached as Exs. A and B of Declaration of James G. Fanslau in Support of Plaintiff SEC's Motion For Partial Summary Judgment, dated January 27, 2003 ("Fanslau Dec.") ¶¶ 2–3.) The SEC is entitled to an order of disgorgement of Grossman's illicit gains in this amount. *See SEC v. Patel,* 61 F.3d 137, 139–40 (2d Cir.1995); *SEC v. Tome,* 833 F.2d 1086, 1096 (2d Cir.1987). The Court has examined the material provided by the SEC describing its methodology and computation of the amount of Grossman's profits subject to disgorgement, which the SEC notes includes insider trading profits from some transactions not expressly charged in the indictment in

the Criminal Action. (*See* Fanslau Dec. ¶¶ 2–3 and attached Exs. A and B.) The Court finds the analysis warranted by the evidence. *See Patel,* 61 F.3d at 139–40 (noting that the amount of disgorgement ordered need be only a reasonable approximation of the defendant's profits causally connected to the violation and that any risk of uncertainty in the calculation should fall on the wrongdoer whose illegal conduct created the uncertainty); *see also First Jersey,* 101 F.3d at 1474–75.

■ Finally, the Court finds Grossman's conduct under the circumstances of this case to be sufficiently culpable to justify imposition of a civil penalty in an amount equal to his unlawful profits.[5] *See* 15 U.S.C. § 78u–1(a) (authorizing a district court to impose a civil penalty up to three times the illegal profit obtained from insider trading); *see also SEC v. Warde,* 151 F.3d 42, 45–46 (2nd Cir.1998) (affirming the district court's imposition of a civil penalty in the amount of the disgorged profits); *SEC v. Sekhri,* No. 98 Civ. 2320, 2002 WL 31100823, at *18 (S.D.N.Y. July 22, 2002). In imposing this amount, the Court has considered the degree of Grossman's culpability, the profits he gained from the unlawful trading over the period of the unlawful trading, the systematic pattern of the misconduct and the deterrent effect of the penalty in the light of Grossman's net worth. *See Sekhri,* 2002 WL 31100823, at *18.

## III. ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the motion of plaintiff Securities Exchange Commission ("SEC") for summary judgment against defendant Norman Grossman ("Grossman") is granted; and it is further

**ORDERED** that Grossman, his agents, servants, employees and attorneys, and those persons in active concert or in participation with them who receive actual notice of the Final Judgment in this action by personal service or otherwise, and each of them, be and hereby are permanently enjoined and restrained from violating Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5, thereunder, 17 C.F.R. § 240.10b–5, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange by (a) employing any device, scheme, or artifice to defraud, (b) making any untrue statement of a material fact or omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) engaging in any act, practice, or course of business that operates or would operate as a fraud upon any person, in connection with the purchase or sale of any security; and it is further

**ORDERED** that Grossman is liable for disgorgement of $435,687.00, representing profits gained as a result of the conduct alleged by the SEC in the complaint in this action, together with prejudgment interest thereon in the amount of $105,208.51, for a total of $540,895.51. Grossman shall satisfy this obligation by paying $540,895.51, within thirty (30) days of the date of this

---

**5.** In this regard, the Court has considered that in Grossman's sentence in the criminal case he was ordered to pay a fine in the amount of $300,000, which the Court indicated should be credited against any amount Grossman paid in settlement of the SEC's action. Because Grossman has not settled with the SEC, he remains obligated to pay the criminal fine. The Court is persuaded that Grossman's criminal penalties of incarceration and fine plus the disgorgement and civil penalty imposed here, would be sufficient to serve punishment and deterrence purposes of § 10(b).

Order, to the Clerk of this Court together with a cover letter identifying Grossman as a defendant in this action, setting forth the title and civil action number of this action and the name of this Court; and specifying that payment is made pursuant to this Final Judgment. Grossman shall simultaneously transmit photocopies of such payment and letter to the SEC's counsel is this action, Tracy L. Price, Esq., Senior Counsel, Division of Enforcement Securities and Exchange Commission, 450 Fifth Street, N.W. Washington, D.C. 20549–0810. By making this payment, Grossman relinquishes all legal and equitable right, title, and interest in such funds, and no part of the funds shall be returned to Grossman; and it is further

**ORDERED** that the Clerk shall deposit the funds specified above into an interest bearing account with the Court Registry Investment System ("CRIS"). These funds, together with any interest and income earned thereon (collectively, the "Fund"), shall be held by the CRIS until further order of the Court. In accordance with the guidelines set by the Director of the Administrative Office of the United States Courts, the Clerk is directed, without further order of this Court, to deduct from the income earned on the money in the Fund a fee equal to ten percent of the income earned on the Fund. Such fee shall not exceed that authorized by the Judicial Conference of the United States. The Commission may propose a plan to distribute the Fund subject to the Court's approval; and it is further

**ORDERED** that, pursuant to Section 21A of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(1)(a), Grossman shall pay to the United States Treasury $435,687.00 as a civil penalty within thirty (30) days of the entry of this Final Judgment. Such payment shall be: (A) made by United States postal money order, cer-

tified check, bank cashier's check or bank money order, (B) made payable to the Securities and Exchange Commission; (C) hand delivered or mailed to the Comptroller, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Stop 0–3, Alexandria, VA 2212; and (D) submitted under cover letter that identifies Grossman as a defendant, the caption and case number of this action, and the name of this Court. Copies of such check or money order and accompanying cover letter shall be simultaneously transmitted to Tracy L. Price, Esq., Senior Counsel, Division of Enforcement, Securities and Exchange Commission, 450 Fifth Street, N.W., Washington, D.C. 20549–0810.; and it is further

**ORDERED** that this Court shall retain jurisdiction of this action for all purposes, including the implementation and enforcement of this Final Judgment; and it is finally

**ORDERED** that within ten (10) days of the date of this Order the SEC inform this Court of its intent with respect to the prosecution of any other claims that may remain unresolved in this action as well as its readiness to proceed to adjudication of such claims or to discontinue them in the light of the relief provided by the Final Judgment authorized herein.

The Clerk of Court is hereby directed, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, to enter the foregoing Final Judgment forthwith.

**SO ORDERED.**